Not Intended for Print Publication

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **WILLIAM THOMPSON**, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:05CV00109 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **VIRGINIA DEPARTMENT OF** ) | By: James P. Jones |
| **GAME AND INLAND FISHERIES,** ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

*William Thompson, Plaintiff Pro Se; John K. Byrum, Jr., Assistant Attorney General of Virginia, Richmond, Virginia, for Defendants.*

In this suit alleging discrimination in violation of Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act, the pro se plaintiff, William Thompson, and the defendant, the Virginia Department of Game and Inland Fisheries ("VDGIF"), have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56(c). For the reasons that follow, I will grant the defendant's motion for summary judgment and deny the plaintiff's motion for summary judgment.

I

The plaintiff resides in Marion, Virginia, and suffers from a number of medical conditions, including degenerative joint disease and asthma, which inhibit his mobility and which have, at times, required him to use a motorized wheelchair. The defendant is an administrative agency established by Virginia law charged with managing the Commonwealth's wildlife resources. The essential facts of the case, either undisputed or, where disputed, recited in the light most favorable to the nonmovant on the summary judgment record, are as follows.

On January 23, 2002, the United States Department of the Interior ("Department") responded by letter to a complaint filed by the plaintiff alleging that VDGIF discriminated against him on the basis of his disability by failing to issue a permit allowing him to hunt from a vehicle. The Department found no ADA violation because conflicting medical documents did not support a finding that the plaintiff was disabled.

On December 20, 2002, the plaintiff wrote a letter to VDGIF personnel requesting to use a motorized scooter on VDGIF lands. Captain Donald W. Hinchey responded on January 15, 2003, by letter, informing the plaintiff that the use of motorized vehicles, like Thompson's scooter, was permitted by state law only on VDGIF lands open to vehicular traffic. The letter also stated that obtaining a permit

to shoot from a vehicle would authorize an individual to use a motorized vehicle on roads closed to the public. Otherwise, Thompson was foreclosed from operating his scooter on any VDGIF land not open to vehicular traffic.

Correspondence with other state entities produced conflicting advice. Subsequent letters responding to the plaintiff's complaint from the Virginia Secretary of Natural Resources and the Virginia Department of Conservation and Recreation informed the plaintiff that motorized scooters meeting the definition of a wheelchair could be operated in Virginia state parks wherever foot travel was permitted and that no state law restricted the use of motorized conveyances by mobility-impaired individuals in State recreation areas.

After the Hinchey correspondence, the plaintiff complained in writing to the Department that VDGIF had discriminated against him on the basis of his disability by not permitting him to operate his scooter on VDGIF lands. The Department responded to the plaintiff's complaint in writing on July 13, 2004, noting that the regulation failed to distinguish traditional motorized vehicles from motorized wheelchairs. The Department requested that the Commonwealth review the plaintiff's request to use a motorized wheelchair on VDGIF lands open to pedestrians, and forward its response to the Department within forty-five days. In the meantime, the Department left open for review Thompson's allegation. In a letter to VDGIF,

the Department noted that the current VDGIF-regulation barring "any type of motorized vehicle" on department-owned lands did not amount to a facial violation of the ADA, but that the regulation had the potential for an overreaching impact. The Department requested that VDGIF amend the regulation to clarify that the use of motorized wheelchairs is permitted on all VDGIF lands open to pedestrian traffic.

In a July 21, 2004 letter, VDGIF advised the Department of its intent to amend the regulation and advise the plaintiff regarding compliance with the regulation. The regulation amendment was effective October 1, 2004. The Department subsequently closed its file on the matter, and informed the plaintiff of the same in a letter on February 8, 2005.

On November 14, 2005, the plaintiff filed suit under 42 U.S.C.A. § 1983 (West 2003), alleging that officers and employees of VDGIF and the Attorney General's office conspired to impede his civil rights complaints against VDGIF. This court subsequently dismissed that suit pursuant to Fed. R. Civ. P. 12(b)(6) on grounds that the plaintiff failed to allege facts sufficient to show a conspiracy. *Thompson v. Va. Dep't of Inland Fisheries*, No. 1:05CV00102 (W.D. Va. Nov. 14, 2005), *aff'd*, No. 05-2310, 2006 WL 775089 (4th Cir. Mar. 27, 2006) (unpublished).

On November 30, 2005, Thompson filed the present pro se complaint, alleging that VDGIF and certain individual defendants violated the ADA and the

Rehabilitation Act by denying his request to use a motorized scooter on VDGIF-administered property, entitling him to damages. In response, the defendants filed a motion to dismiss, asserting lack of jurisdiction over the individually-named defendants, failure to state a claim upon which relief may be granted, Eleventh Amendment immunity, and untimeliness. By order of February 7, 2006, I granted the motion to dismiss as to the individually-named defendants, but allowed Thompson's ADA and Rehabilitation Act claims to proceed against VDGIF. Currently pending before the court are the parties' cross-motions for summary judgment, briefed and timely filed. The issues are now ripe for review.

II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'n Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

- 5 -

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

In opposing summary judgment, the nonmoving party must "set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). Inadmissible hearsay cannot be used to oppose summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

Summary judgment is appropriate only if there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 322. All reasonable inferences are "viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Although the moving party must provide more than a conclusory statement that there are no genuine issues of material

fact to support a motion for summary judgment, it "'need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case.'" *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393-94 (4th Cir. 1994) (quoting 10A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2720, at 10 (2d ed. Supp. 1994)); *see also Celotex,* 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party's evidence must be probative, not merely colorable, *Anderson,* 477 U.S. at 256, cannot be "conclusory statements, without specific evidentiary support," *Causey v. Balog,* 162 F.3d 795, 802 (4th Cir. 1998), cannot be hearsay, *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir. 1996), and must "contain admissible evidence and be based on personal knowledge." *Id.*

Title II of the ADA and § 504 of the Rehabilitation Act prohibit discrimination against individuals on the basis of handicap. 42 U.S.C.A. § 12132 (West 2005); 29 U.S.C.A. § 794 (West 1999 & Supp. 2005). Congress, in enacting the ADA and the Rehabilitation Act, omitted a statute of limitations on actions arising therefrom. *See*

*Wilson v. Garcia*, 471 U.S. 261, 268 (1985). Another federal statute, 42 U.S.C.A. § 1988(a) (West 2003), provides for the selection of an appropriate or analogous statute of limitations derived from the state law statute of limitations most applicable to the federal statute at issue. *See Wilson*, 471 U.S. at 268.

In *Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 224 (4th Cir. 1993), the court of appeals held that the one-year statute of limitations provided by the Virginia Rights of Persons with Disabilities Act ("Virginia Act") was most appropriately applied to claims under the Rehabilitation Act. Va. Code Ann. § 51.5-46 (Michie 2005). The court noted that the Virginia Act quotes directly from and affords the same remedies as the Rehabilitation Act, and that the two statutes prohibit the same discriminatory conduct. *Id.* at 224. The same one-year statute of limitations has been held in Virginia to apply to ADA claims, as the ADA was closely modeled on the Rehabilitation Act. *See Childress v. Clement*, 5 F. Supp. 2d 384, 388 (E.D. Va. 1998); *see also Simchick v. Fairfax County Sch. Bd.*, No. 1:05CV1476(JCC), 2006 WL 721372, at *4 (E.D. Va. Mar. 20, 2006). Because the plaintiff brings his claims for relief under the Rehabilitation Act and the ADA, I must apply the one-year statute of limitations. Accordingly, after a careful review of the record, I find that the plaintiff's action was untimely filed.

To reach that decision, I must first determine when the statute of limitations began to run with regard to the plaintiff's claim. Unlike Title I ADA claims involving employment discrimination, claims involving public services arising under Title II of the ADA and § 504 of the Rehabilitation Act do not require that plaintiffs exhaust their administrative remedies prior to filing suit. *See* 42 U.S.C.A. § 12132; 29 U.S.C.A. § 794; *see also Grubbs v. Med. Facilities of Am., Inc.*, No. 94-0009-D, 1994 WL 791708, *1 (W.D. Va. Sept. 23, 1994) (holding there is no exhaustion requirement under Title III of the ADA or the Rehabilitation Act); *Tuck v. HCA Health Servs. of Tenn.*, 7 F.3d 465, 470-71 (6th Cir. 1993) (holding exhaustion requirement does not apply to nonfederal employees); *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990) (holding private plaintiffs suing under § 504 need not exhaust administrative remedies); *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1339 (N.D. Cal. 1994) (holding exhaustion of administrative remedies not prerequisite to suit under § 504). Thus, because the plaintiff here was under no obligation to file an administrative appeal prior to filing the present suit, the commencement of the statute of limitations could not be linked to any administrative procedure.

Instead, the plaintiff's claim accrued upon his discovery of the original act of discrimination. While the Fourth Circuit has not spoken squarely on this topic, other

courts of appeals have applied the Supreme Court's reasoning in *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980), and *Chardon* v. *Fernandez*, 454 U.S. 6, 8 (1981), to hold that the statute of limitations on a Title II ADA or § 504 claim begins to run with "the discriminatory act" rather than at the point at which the consequences of the discrimination become painful. *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 552 (7th Cir. 1996). Following this authority, the plaintiff's claims here accrued on or about January 15, 2003, upon receiving the letter from Captain Hinchey of the VDGIF, denying the plaintiff's request to use a motorized wheelchair on pedestrian walkways. At that point, the plaintiff was aware of each of the facts required to make out an ADA claim—that he was disabled,[1] that he was denied the use of public services on VDGIF lands, and that the denial was based on his disability. *See Baird v. Rose*, 192 F.3d 462, 467 (4th. Cir. 1999) (setting forth elements of claim). The plaintiff waited to file suit until November 2005, nearly three years after his claims accrued and well past the one-year statute of limitations. For

---

[1] While there appears to be some dispute over whether the plaintiff's condition renders him disabled under the statute, I must view all facts in favor of the plaintiff in granting the defendants' motion for summary judgment. *Matsushita*, 475 U.S. at 587.

- 10 -

this reason, I find that the plaintiff's complaint is time-barred, and accordingly grant the defendant's motion for summary judgment.[2]

III

For the foregoing reasons, I will enter judgment denying the plaintiff's motion for summary judgment and granting the defendant's motion for summary judgment.

ENTER: May 14, 2006

/s/ JAMES P. JONES
Chief United States District Judge

---

[2] Because of my ruling, it is unnecessary for me to consider the defendant's other grounds for summary judgment.